UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| |
|---|
| HONEY DEW ASSOCIATES, INC.,<br>          Plaintiff, |
| v. |
| JSJE, LLC, JAMES PROTOPAPAS, and<br>SANDRA E. PROTOPAPAS,<br>          Defendants. |

## **VERIFIED COMPLAINT**

### **JURISDICTION**

1. The jurisdiction of this Court is based upon 28 U.S.C. §1338 (a) and (b) as this action relates to Defendants' unauthorized use of certain trademarks and Defendants' unfair competition related thereto. The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051-1127 (1982), specifically §§ 1114(1) and 1125(a). The Court has supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

### **JURISDICTION**

2. Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 2 Taunton Street, Plainville, Massachusetts.

3. At all times relevant hereto, HDA has been and continues to be the owner of several United States trademarks and service marks, all on the Principal Register, and certain state trademarks and service marks registered in Massachusetts, including those set forth in

Exhibit "A" hereto (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks").

4. At all times relevant hereto, HDA has been engaged in the granting of franchises for coffee and donut shops known as "Honey Dew Donuts® Shops".

5. A franchise for a Honey Dew Donuts® Shop, in relevant part, includes providing the franchisee with a license to utilize methods of production, merchandising, display and advertising methods, including the use of specifically designed buildings, equipment accessories, identification schemes, products, management programs, standards, specifications and proprietary recipes, production techniques, the Marks and goodwill (collectively, the "System").

## THE DEFENDANTS

6. Defendant JSJE, LLC ("JSJE") is a New Hampshire Limited Liability Company, with a place of business at 741 Lafayette Road, Seabrook, NH.

7. At all times relevant hereto, JSJE was a franchisee of HDA and operated Honey Dew Donuts® Shops at (i) 741 Lafayette Road, Seabrook, NH (the "Seabrook Premises") pursuant to a Franchise Agreement and Addendum to Franchise Agreement dated March 25, 2005, a copy of which is attached hereto as Exhibit "B" and (ii) at a portion of 2975 Lafayette Road, Portsmouth, NH (the "Portsmouth Premises") pursuant to a Franchise Agreement dated June 15, 2009 (collectively, the "Franchise Agreements"), a copy of which is attached hereto as Exhibit "C"..

8. Defendant James Protopapas ("James") is a citizen of the Commonwealth of Massachusetts residing at 221 Blue Ridge Road, North Andover, MA.

9. James is jointly and severely liable to HDA for the obligations of JSJE to HDA pursuant to a Liability Agreement dated March 25, 2005 and a Liability Agreement dated June 15, 2009 (collectively, the "Liability Agreements"), copies of which are attached hereto as Exhibit "D".

10. Sandra E. Protopapas ("Sandra" and, together with James, the "Protos" and, together with James and JSJE, the "Defendants") is a citizen of the Commonwealth of Massachusetts residing at 221 Blue Ridge Road, North Andover, MA.

11. The Protos are guarantors of the obligations of JSJE to HDA pursuant to guarantees dated October, 2005, copies of which are attached hereto as Exhibit "E" (the "Guarantees").

12. In connection with said transactions, JSJE and James executed Covenants Not to Compete and Covenants to Protect Trade Secrets and Proprietary Information (collectively, the " Covenants" and, together with the Franchise Agreements, the Liability Agreements and the Guarantees the "Documentation"), copies of which are attached hereto as Exhibit "F".

## FINANCIAL OBLIGATIONS

13. In relevant part, the Seabrook Franchise Agreement and related Documentation require Defendants to report gross sales weekly and to make weekly payments of 7% of gross sales to HDA as a royalty and 2% of gross sales to the HDA as a contribution to the Honey Dew Fund, such reports and payments due each Friday for the week ending the preceding Sunday.

14. In relevant part, the Portsmouth Franchise Agreement and related Documentation require Defendants to report gross sales weekly and to make weekly payments of 7% of gross sales to HDA as a royalty and 2% of gross sales to the HDA as a contribution to the Honey Dew Fund, and to pay a franchise fee of $50.00 per week of operation, such reports and payments due each Friday for the week ending the preceding Sunday.

15. Pursuant to Section XX(A) of the Franchise Agreements, JSJE and James are liable to HDA for its cost of enforcing the Franchise Documents and of collection, including reasonable counsel fees.

16. Pursuant to Section II(D) of the Franchise Agreements, overdue payments accrue interest at a rate of 18% from the date due to the date paid.

### Default and Termination Procedures

17. In relevant part, the Franchise Agreements provide in Section XX(A)(3) that JSJE may cure a payment default within seven (7) days of receipt of a notice of default. The payment required to cure a default includes all overdue amounts specified in the notice of default, all payments which had come due since the issuance of the notice of default, interest at 18% from the due date to the date paid for each late payment, and all reasonable costs and fees resulting from the late payment including reasonable counsel fees and costs of collection.

18. In relevant part, the Franchise Agreements provide in Section XX(A)(3) that if a payment default is not timely cured, HDA may terminate the underlying franchise agreement by written notice.

### Defaults and Notices

19. On or about January 24, 2011, two notices of default were issued to JSJE, one for each location (the "Notices of Default"), copies of which are attached hereto as Exhibit "G", for failing to timely pay sums due to HDA dating back to the week ending September 19, 2010.

20. Defendants failed to timely cure the defaults specified in the said Notices of Default.

21. On or about February 7, 2011, HDA issued Notices of Termination to JSJE, one for each location, for JSJE's failure to timely cure the defaults set forth in the Notices of Default, copies of which are attached hereto as Exhibit "H".

## COUNT I- TRADEMARK

22. Plaintiff repeats and reavers the allegations of paragraphs one through 21 of the Complaint as if expressly rewritten and set forth herein.

23. Pursuant to Section XXI(A)(1) of the Franchise Agreements, following termination, Defendants are required to immediately discontinue use of the Marks following termination.

24. Following termination, JSJE continued its operations and continued to operate under the Marks.

25. On February 17, 2011, HDA issued two cease and desist notices to JSJE, one for each location, copies of which are attached hereto as Exhibit "I".

26. As of the filing of this action, JSJE continued its operations and continued to operate under the Marks.

27. In relevant part, section XXI(A)(1) of the Franchise Agreements provide that the franchisee's post-termination "continued use of the (Marks) licensed hereunder

5

including, without limitation, the name "Honey Dew Donuts®" shall constitute willful trademark infringement . . ."

28. Use of HDA's Marks by Defendants after termination is a violation of the Franchise Agreements and constitutes an intentional misuse of HDA's trademarks with the intent to deprive Plaintiff of its rightful profits and goodwill and to mislead and confuse the public as to the nature and origin of donut and other products being sold by Defendants.

29. Defendants continued use of HDA's Marks, subsequent to termination, constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and applicable state trademark and unfair competition law.

30. Defendants have misappropriated HDA's Marks with the intent to cause mistake and confusion, and said acts constitute unfair competition and an infringement of HDA's common-law and statutory rights in its trademarks. Defendants' actions are a fraudulent attempt to mislead the public into believing that the goods sold by Defendants were made by, approved by, and/or authorized by HDA and to reap the benefits of such association.

31. Plaintiffs have no adequate remedy at law and they and their other franchisees will suffer irreparable harm by Defendants' continuing to hold themselves out as a licensed operator of Honey Dew Donuts® Shops in violation of said Franchise Agreements.

32. By reason of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation and goodwill, as well as to the benefit of their Franchise Agreements which have been violated by Defendants, and have incurred counsel fees for which Defendants are liable pursuant to the applicable contracts and applicable statutes and common law.

33. Pursuant to Section XXI(A)(4) of the Franchise Agreements, following termination, Defendants are required to return JSJE's Operational Excellence Procedure Manual, all amendments all training materials and all operation materials (collectively, the "Manual"). Defendants have failed to comply with this requirement.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A. Enter Preliminary and Permanent Injunctions ordering Defendants to cease operations;

B. Enter Preliminary and Permanent Injunctions enjoining the Defendants from using or displaying any of the Plaintiff's trademarks, trade names, service marks, logos, symbols and trade dress, or any other marks, trade names or trade dress that are a colorable imitation of or otherwise likely to be mistaken for or confused with or dilute the distinctiveness of Plaintiff's trademarks, service marks, and trade dress, in connection with the advertising, distribution, display or sale of any product or service;

C. Enter Preliminary and Permanent Injunctions enjoining the Defendants from representing themselves as being in any way associated with the Honey Dew® franchise system or making any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by the Plaintiff;

D. Enter Preliminary and Permanent Injunctions enjoining the Defendants from using, selling, lending, distributing, licensing, giving, transferring, assigning, showing, disclosing, disseminating, reproducing, copying, misappropriating, or otherwise communicating any portion of the Honey Dew Operational Excellence Procedures

7

Manual or any other trade secrets or confidential information provided to Defendants by Plaintiff and ordering the Defendants to return to HDA all copies of the Operational Excellence Procedures Manual, all training materials and all operational materials provided to them or to anyone on their behalf, that are in their possession, custody, or control;

E. Assess and award damages for the period of willful trademark infringement, including Defendants' profits, such other punitive, compensatory and/or exemplary damages as the court may deem just against Defendants jointly and severally, plus interest, counsel fees and the costs of this action; and

F. Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT II- REAL ESTATE CLAIMS-SEABROOK

34. Plaintiff repeats and reavers the allegations of paragraphs one through 33 of the Complaint as if expressly rewritten and set forth herein.

35. JSJE occupies the Seabrook Premises pursuant to a Lease dated December 3, 2003, a copy of which is attached hereto as Exhibit "J".

36. JSJE, its landlord for the Seabrook Premises and HDA are parties to a Conditional Assignment of Lease ("Conditional Assignment"), a copy of which is attached hereto as Exhibit "K" (attachment omitted, See Exhibit J). In relevant part, the Conditional Assignment provides HDA, upon termination of the Franchise Documents, an option to take over the Seabrook Premises as a replacement tenant and requires JSJE to vacate the Seabrook Premises immediately.

37. HDA intends to cure any defaults of JSJE to the landlord for the Seabrook in Seabrook Premises and, pursuant to the Conditional Assignment, take over the Seabrook Premises as tenant.

38. Pursuant to Section XXI(A)(2) of the Seabrook Franchise Agreement, following termination, Defendants are required to "peaceably and forthwith give up to (HDA) the Premises . . ."

39. Defendants have failed to vacate the Seabrook Premises.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A. Enter Preliminary and Permanent Injunctions ordering Defendants to immediately vacate and turn over to HDA the premises at 741 Lafayette Road, Seabrook, NH;

B. Determine the amount required to be paid by HDA arising from the defaults to its landlord of JSJE and enter judgment against defendants, jointly and severally, plus interest, costs, and counsel fees; and

C. Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT III- REAL ESTATE CLAIMS-PORTSMOUTH

40. Plaintiff repeats and reavers the allegations of paragraphs one through 39 of the Complaint as if expressly rewritten and set forth herein.

41. JSJE occupies the Portsmouth Premises pursuant to Section II(B) of the Portsmouth Franchise Agreement (hereafter, "Section IIB"), which assigns certain rights pursuant to a License Agreement between Gibbs Oil Company Limited Partnership and HDA dated June 8, 2008 (the "License Agreement"), a copy of which is attached hereto as internal-

Ex. A to Exhibit C. In relevant part, Section IIB also requires JSJE to make all payments due to Gibbs Oil Company Limited Partnership required by the License Agreement.

42. In relevant part, Section II(B) provides that " . . .any termination of the (Portsmouth) Franchise Agreement shall terminate this assignment and your right to occupy the Premises shall contemporaneously revert to us and (JSJE) shall forthwith vacate the Premises upon receipt of written notice from (HDA). . . (and HDA) shall be entitled to obtain injunctive relief, on notice to you, compelling you to vacate the (Portsmouth) Premises."

43. Pursuant to Section II(B)(iv) of the Portsmouth Franchise Agreement, upon termination "(JSJE's) right to occupy the (Portsmouth) Premises shall contemporaneously revert to (HDA) and (JSJE) shall forthwith vacate the (Portsmouth) Premises . . .

44. Pursuant to Section XXI(A)(2) of the Portsmouth Franchise Agreement, following termination, Defendants are required to "peaceably and forthwith give up to (HDA) the Premises . . ."

45. Defendants have failed to vacate the Portsmouth Premises.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A. Enter Preliminary and Permanent Injunctions ordering Defendants to immediately vacate and turn over to HDA the premises at 2975 Lafayette Road, Portsmouth, NH:

B. Determine the amount required to be paid by HDA arising from the defaults to Gibbs Oil Company Limited Partnership and enter judgment against defendants, jointly and severally, plus interest , costs, and counsel fees; and

C. Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT IV- BREACH OF CONTRACT

46. Plaintiff repeats and reavers the allegations of paragraphs one through 45 of the Complaint as if expressly rewritten and set forth herein.

47. Defendants have breached the Franchise Agreements by failing to make required payments due through the date of termination, February 8, 2011.

WHEREFORE, plaintiff prays that this Honorable Court:

(A) Determine the amount due HDA from the Defendants through the date of termination of the Franchise Agreements, February 8, 2011, and award judgment against the Defendants, jointly and severally, including interest from the date due at a rate of 18%, counsel fees and the costs of this action; and

(B) Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT V- POST TERMINATION DAMAGES

48. Plaintiff repeats and reavers the allegations of paragraphs one through 47 of the Complaint as if expressly rewritten and set forth herein.

49. In relevant part and without limitation, Section XXI(B)(2)(a) of the Franchise Agreements require Defendants, if operating post-termination, to pay all amounts which, but for termination of the Franchise Documents, would have come due at the time such payments would have come due, plus 25% of such payments, plus interest at 18% from the date due to the date paid.

50. In relevant part and without limitation, Section XXI(B)(2)(a) of the Franchise Documents require Defendants to pay additional sums to Plaintiff.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A. Determine the amount due HDA from the Defendants from the date of termination of the Franchise Agreements, February 8, 2011, and award judgment against the Defendants, jointly and severally, including interest from the date due of each payment at a rate of 18%, counsel fees and the costs of this action; and

B. Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT VI-NOTE CLAIMS

51. The Plaintiff repeats and realleges the allegations of paragraphs 1-50 of the Complaint as if expressly rewritten and set forth herein.

52. On or about June 15, 2009, JSJE and James executed a Commercial Promissory Note in favor of HDA in the original principal amount of $52,000.00, a copy of which is attached hereto as Exhibit "L" ("Note-1").

53. On or about October 14, 2005, JSJE and James executed a Term Promissory Note in favor of HDA in the original principal amount of $80,000.00, as amended by an Allonge dated February 19, 2009, copies which are attached hereto as Exhibit "M" ("Note-2" and, together with Note-1, the "Notes").

54. In relevant part, Note 2 accelerates sums due for failure to make payments to HDA when due.

55. On or about January 24, 2011, HDA made demand for full payment of Note 2, a copy of which is attached hereto as Exhibit "N".

56. In relevant part, Note 1 permits acceleration upon termination of the (Portsmouth) Franchise Agreement.

57. Upon default, the Notes allow HDA to recover its costs of collection, legal expenses and fees.

58. Upon default, Note 1 provides that interest shall be increased to 18% per annum until payment in full.

59. In accordance with the agreement of the parties, as set forth in the Notes, as of March 11, 2011, Defendants owe HDA

|  | Note 1 | Note 2 |
|---|---|---|
| Principal | $48,352.97 | $27,363.87 |
| Interest | $2,766.60 | -0- |
| Late Charges | -0- | $229.55 |

plus continuing interest calculated at 18% per annum for Note 1 and at 12% per annum for Note 2, continuing late fees and costs of collection including reasonable counsel fees.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, including continuing interest, legal fees and costs.

Plaintiffs,
By its Attorneys,

Date: March 16, 2011

/s/ Jane Albrecht
Jack J. Mikels, BBO# 345560
Michael A. Wirtz, BBO# 636587
Jane Albrecht, BBO # 671855
JACK MIKELS & ASSOCIATES, LLP
1 Batterymarch Park, Suite 309
Quincy, MA 02169
Tel: 617.472.5600
jmikels@gis.net

13

## **VERIFICATION**

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey Dew Associates, Inc. and that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.

                                                Richard J. Bowen, President
                                                Honey Dew Associates, Inc.

/mik/hda/lit/seabrook;fedcomplaint